UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARLENE BLANKENSHIP, ) | |
| n/k/a DARLENE LEON, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV604 JCH |
| ) | |
| ZURICH AMERICAN ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Zurich American Insurance Company's Motion for Summary Judgment, and Plaintiff Darlene Blankenship, n/k/a Darlene Leon's Motion for Summary Judgment, both filed November 19, 2008. (Doc. Nos. 26, 28). The motions are fully briefed and ready for disposition.

## BACKGROUND

On or about January 1, 2005, Defendant Zurich American Insurance Company ("Defendant") issued to GDX Holdings, Inc. Group Accident Policy Number GTU 3513761 ("Group Accident Policy"), to offer as a benefit to its employees and their family members. (Defendant's Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment ("Defendant's Facts"), ¶ 1, citing BLA00001-26[1]). On or about January 1, 2005, Defendant further issued to GDX Holdings, Inc. Supplemental Blanket Accident Policy Number GTU 4847565 ("Supplemental Accident Policy"),

---

[1] Citations to "BLA----" refer to the administrative record filed by stipulation of the parties on October 28, 2008 (Doc. No. 25).

to offer as a benefit to its employees and their family members. (Defendant's Facts, ¶ 2, citing BLA00027-44).

The Group Accident Policy defined "injury" as follows: "a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs``while the Covered Person is insured under this Policy." (BLA00002).[2] Among other things, the Group Accident Policy excluded from coverage losses caused by, contributed to, or resulting from suicide, attempted suicide, or purposeful self-inflicted wounds. (Id.).[3] The Group Accident Policy further provided that Defendant possessed discretionary authority to determine eligibility for benefits and to construe the terms of the plan. (BLA00024).[4]

Prior to his death, Charles Blankenship ("Blankenship") was employed by GDX Holdings, Inc. (Defendant's Facts, ¶ 3, citing BLA00046). Blankenship was a participant in both the Group Accident Policy, and the Supplemental Accident Policy. (Id., ¶ 4). Blankenship's wife, Plaintiff Darlene Blankenship, n/k/a Darlene Leon ("Plaintiff"), was the named beneficiary under both policies. (Id.). During his lifetime, Blankenship paid all premiums due on each policy. (Plaintiff's Statement of Uncontroverted Material Facts ("Plaintiff's Facts"), ¶ 6, citing BLA00059).

On February 25, 2005, Blankenship died in a single vehicle crash in Franklin County, Missouri. (Defendant's Facts, ¶ 5, citing BLA00047-51). The police report described the accident as follows:

> Vehicle #1 was traveling westbound on Rt. E when driver #1 failed to negotiate a curve. Vehicle #1 traveled partially off the north side of the road.

---

[2] The Supplemental Accident Policy similarly defined "injury" as follows: "a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Insured has coverage under this Policy." (BLA00028).

[3] The Supplemental Accident Policy contained an identical provision. (BLA00028).

[4] The Supplemental Accident Policy contained an identical provision. (BLA00043).

> Vehicle #1 returned to the road and driver #1 lost control of the vehicle. Vehicle #1 then traveled off the north side of the road and went airborne. As vehicle #1 landed its right side struck an embankment. After impact vehicle #1 overturned and came to rest on its right side. Driver #1 was completely ejected through the driver's window.

(BLA 00050).[5] Blankenship was transported to St. John's Hospital in Washington, Missouri, where he was pronounced dead. (Id.).

In her report, the Medical Examiner described the cause of death as follows: "Immediate Cause: Blunt Chest Trauma; Other Significant Conditions: Acute Ethanol Intoxication." (BLA 00058). The toxicology results indicated that at the time of the examination, Blankenship had a blood alcohol level of 0.147 gm% (147 mg/dl), and a vitreous alcohol level of 0.161 gm% (161 mg/dl). (Plaintiff's Facts, ¶ 22, citing BLA 00058, 60). The Medical Examiner described the manner of death as accidental. (BLA 00058).

On or about May 9, 2005, Plaintiff delivered to Defendant proof of death of Blankenship. (Plaintiff's Facts, ¶ 25, citing BLA 00061-66). Defendant retained Research Service Bureau, Inc. to investigate the death. (Defendant's Facts, ¶ 10). An investigator interviewed Plaintiff on June 15, 2005, and reported in part as follows:

> Charles and Darlene Blankenship had been married for nineteen years. He worked at a local factory in the area. He worked the third shift. He usually got off work at about 7:00 a.m. Normally after work, he would come home and eat breakfast with his wife. Mrs. Blankenship worked the day shift at Maritz in Fenton, Missouri.
>
> On this particular date, 02/25/05, Mr. Blankenship called his wife. He said he would not be home before she left for work. He said he was going to eat breakfast with his friends from work. Mrs. Blankenship did not think there was anything unusual about this. On her way to work, she drove by a restaurant where they normally ate breakfast. She noted that his car was not parked in the restaurant parking lot. It was parked at the Hilltop Tavern. She

---

[5] Blankenship was not wearing his seatbelt at the time of the accident. (Plaintiff's Facts, ¶ 14, citing BLA00049).

went into the Hilltop Tavern and noted that her husband was sitting with his friends consuming an alcoholic beverage. She asked him what was going on. He said he was just eating breakfast and having a few drinks with his friends. Mrs. Blankenship was not angry at that time. She told him to be careful and kissed him goodbye. She then went to work.

Later that morning she found that her husband had been involved in a fatal accident. She said her husband rarely drank. He had a few drinks on occasion but, due to having diabetes, he was not supposed to drink alcohol. Occasionally, he would drink one or two margaritas. She said his blood sugar became high when he drank alcohol. She was extremely surprised that he consumed more than one or two beverages on this date. She did not know how many beverages he consumed. Charles never drank alcohol in the morning and she was shocked that he became intoxicated that morning. She was further surprised when she saw the death certificate indicating the cause of death as acute ethanol intoxication. She said she only in the last few days received a copy of the autopsy and toxicology report. She was again surprised at the high alcohol level indicated in her husband's blood stream....

Mr. Blankenship had never been treated for alcohol or drug abuse. He had not lost his driver's license in the nineteen years Darlene Blankenship had known him. She did not believe that he was severely depressed or had any suicidal ideation at the time of his death.

(BLA00088-89).

In a letter dated August 12, 2005, Defendant denied Plaintiff's claim for benefits in relevant part as follows:

> We have completed our review of your claim for benefits under the above-referenced policy by reason of the death of your husband, Charles Blankenship. Regrettably, for the reasons explained below, we have concluded that no benefits are payable in response to your claim.
>
> GDX Holdings, Inc. established and maintains an employee benefit plan, funded in part through Group Accident Policy No. GTU-3513761 issued by Zurich American Insurance Company and Blanket Accident Insurance Policy No. GTU-4847565, also issued by Zurich American. Both policies provide benefits for loss, including death, for injuries which are defined in the policy as follows:
>
>> "Injury means a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Insured has coverage under this policy." (Policy GTU-3513761)

> "Injury means a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the covered person is insured under this policy." (Policy GTU-4847565)

Benefits under these policies are subject to various enumerated exclusions and limitations, including the following:

> "A. A loss shall not be a Covered Loss if it is caused by, contributed to, or resulted from:
>
> > 1. Suicide, attempted suicide, or a purposeful self-inflicted wound."

In order to conduct a full and complete investigation of your claim, we requested, received and reviewed various documentation concerning the circumstances surrounding your husband's death. This documentation included records from his family physician, Thomas Davis, St. John's Mercy Hospital, Pratt's Pharmacy, Dean Lusardi, M.D., the Medical Examiner's report from Franklin County, the death certificate, Highway Patrol records, toxicology report, and our interview with you. Our understanding of the facts of this claim is based upon our review of that documentation.

Charles H. Blankenship was driving your pickup truck on February 25, 2005 at about 10:15 a.m. when he failed to negotiate a curve, lost control, went airborne and was ejected. He was pronounced dead at the hospital at 11:30 a.m. that morning. According to the traffic report, the conditions were clear and dry, and he was driving too fast. The death certificate identified "acute ethanol intoxication" as a condition significantly contributing to death, and toxicology reports reflect his blood alcohol level at 0.14% g/dl.

According to your statement, Mr. Blankenship was having several drinks at a tavern with friends after his shift ended at the plant at about 8:00 a.m. You were puzzled by his blood alcohol level, given his diabetic condition which generally caused his blood sugar to spike when he drank alcohol. Zurich obtained his medical records which were remarkable for diabetes, and clinical depression.

Benefits are payable under this policy only if the loss occurs as the result of an injury, which is defined as a "bodily injury directly caused by accidental means which is independent of all other causes...." An insured's death resulting from his voluntary act constitutes death by accidental means only if something accidental happened during the act (for example, a slip, mishap or mischance), some accidental event intervened to cause the death, or the act itself was not of a type that its common, natural or probable consequence would be to visit injury or death upon the insured. Here, Mr. Blankenship

was driving at a high rate of speed under the influence of alcohol. His blood alcohol level was 0.14%, almost twice the legal limit in Missouri of 0.08%. We consider that this act itself is of the type that its common, natural or probable consequence would be to visit injury or death upon the driver. Mr. Blankenship voluntarily drove a motor vehicle under the influence in a reckless manner. There is no evidence that any slip, mishap or mischance intervened to cause his death.

Even if we had concluded that Mr. Blankenship's death constituted an "injury" as defined in the policy, we would nevertheless have concluded that it was excluded under the self-inflicted injury exclusion cited above.

(BLA00212-213). Plaintiff appealed the decision, and on December 22, 2005, Defendant denied the claim on appeal as follows:

> The ERISA Review Committee (the "Committee") met on December 20, 2005 to review the above-captioned appeal.
>
> The Committee reviewed the administrative record. The claimant did not submit documents or evidence in support of the appeal.
>
> The Committee noted that each of the above-captioned policies contain the ERISA Claims Fiduciary endorsement which is attached to and is part of each Policy.
>
> The ERISA Claims Fiduciary endorsement reads in pertinent [part]
>
> "The Policyholder designates Us [Zurich American Insurance Company] as the claims fiduciary of this plan and gives Us the discretionary authority to determine eligibility for benefits and to construe the terms of the plan."
>
> The claimant did not challenge the legal or factual basis for the claim denial in this case.
>
> Pursuant to its authority under the ERISA Claims Fiduciary endorsement, it is the Committee's view that the basis for the denial as set forth in the denial letter dated August 12, 2005 should be upheld based upon the facts, the Policy language and the case law cited in the letter. The denial letter is incorporated by reference herein.
>
> The Committee also noted that the three circuit court of appeals which have specifically addressed cases where an Insured was driving an automobile while intoxicated have upheld the denial of the claims. Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998); Poeppel v. Hartford Insurance

Company 87 Fed. Appx. 885 (4th Cir. 2004); and Cates v. Metropolitan Life Insurance Company 1998 U.S. App. LEXIS 14975 (6th Cir. 1998).

Accordingly, the Committee affirmed the denial.

(BLA 00172-173).

Plaintiff filed her original Petition for Damages in this matter in the Circuit Court of Franklin County, Missouri, on March 24, 2008. (Doc. No. 1-4, PP. 5-8). After Defendant removed the case to this Court, Plaintiff filed an Amended Petition for Damages on May 6, 2008. (Doc. No. 13). In her Second Amended Petition for Damages ("Complaint" or "Compl."), filed July 25, 2008, Plaintiff alleges Defendant's denial of benefits constituted an abuse of discretion, and was "unreasonable, arbitrary, and/or capricious, due to reliance on ambiguous policy language and not relying on the coroner's finding that the cause of death was blunt chest trauma." (Compl., ¶ 15). As relief, Plaintiff requests damages in the sum of $234,000.00, interest on that amount from February 25, 2005, until the time of payment, attorney's fees and costs. (Id., P. 4). As stated above, Plaintiff and Defendant filed competing Motions for Summary Judgment on November 19, 2008. (Doc. Nos. 26, 28).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. ERISA Standard Of Review

"In evaluating questions of policy interpretation under ERISA, federal courts apply only federal common law." Courtney v. Zurich American Ins. Co., 2008 WL 189836 at *3 (D. Neb. Jan. 22, 2008) (citations omitted).

> When applying federal common law, binding precedent for all courts is set only by the Supreme Court. The district courts within a circuit are bound by the precedent set by the court of appeals for that circuit. Thus, on questions of federal common law, this court is actually bound by the precedent of only the United States Supreme Court and the Eighth Circuit Court of Appeals.

Id.

Under Eighth Circuit law, "[t]he district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original)

(citation omitted). See also King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 998-999 (8th Cir. 2005) (internal quotations and citations omitted) ("Where a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations, however,....the administrator's decision is reviewed only for abuse of his discretion, and the administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable."). In reviewing for abuse of discretion, the Court must look to see if the administrator's decision was supported by substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." King, 414 F.3d at 999 (internal quotations and citation omitted). In making this determination, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." Id. (internal quotations and citation omitted).

In the instant case, Plaintiff acknowledges that both the Group Accident Policy and the Supplemental Accident Policy granted Defendant discretionary authority to construe terms and determine eligibility for benefits. (See Plaintiff's Memorandum in Support of its Motion for Summary Judgment, P. 6). This Court therefore must review Defendant's decision to deny benefits for abuse of discretion. See Courtney, 2008 WL 189836 at *4; see also King, 414 F.3d at 1000.

## II.  Review For Abuse Of Discretion

As explained above, when a benefit plan gives the administrator discretion to interpret uncertain terms in the plan, the Court typically begins its analysis by considering whether the administrator's interpretation of the terms was "reasonable." King, 414 F.3d at 1001. In the instant case, the plan language obligated Defendant to pay benefits if the plan participant sustained, "a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Covered Person is insured under this Policy." (BLA00002, 00028).

The policies exempted from coverage those situations in which the death was, "caused by, contributed to, or resulting from suicide, attempted suicide, or purposeful self-inflicted wounds." (Id.).

In its initial decision on Plaintiff's claim, Defendant relied on an "accidental means" analysis to deny Plaintiff's claim. (BLA 00213). In other words, Defendant found that because there was no evidence any slip, mishap or mischance intervened to cause Blankenship's death, the death was not accidental. (Id.). Defendant affirmed this rationale for the denial in its final denial letter. (BLA 00172).[6] This Court's normal approach, therefore, would be to consider whether it was reasonable to construe the terms of the plan in this manner. King, 414 F.3d at 1002.

Upon consideration, the Court finds it unnecessary to reach the issue in this case, because Defendant has not defended its denial of Plaintiff's claim for benefits on the grounds that the death did not result from "accidental means."[7] King, 414 F.3d at 1002. Rather, Defendant now maintains[8] the proper definition of "accidental" is that set forth by the First Circuit, which held there is no accident if, "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."

---

[6] In its final denial, Defendant further cited three circuit court of appeals opinions upholding the denial of claims when an insured was driving an automobile while intoxicated. (BLA 00173, citing Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998); Poeppel v. Hartford Ins. Co., 87 Fed. Appx. 885 (4th Cir. 2004); and Cates v. Metropolitan Life Ins. Co., 1998 U.S. App. LEXIS 14975 (6th Cir. 1998)). In its letter, however, Defendant neither delineated the interpretation of the term "accidental" approved in those cases, nor attempted to apply the standard to the facts of this case. Under these circumstances, this Court cannot determine whether the proffered interpretation of "accidental" was reasonable, or whether there was substantial evidence to support the denial of benefits under such an interpretation. King, 414 F.3d at 1004.

[7] In its Memorandum in Support of its Motion for Summary Judgment, Defendant never engages in an "accidental means" analysis, and thus this Court will not, "consider whether the abandoned rationale provides a sufficient basis to reject the beneficiary's claim." King, 414 F.3d at 1006 n. 4.

[8] See Defendant's Response to Plaintiff's Motion for Summary Judgment, P. 21.

Wickman v. Northwestern Nat. Ins. Co., 908 F.2d 1077, 1088 (1st Cir.) (citation omitted), cert. denied, 498 U.S. 1013 (1990); see also Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 89 (1st Cir.), cert denied, 129 S.Ct. 636 (2008) (same). The Court thus concludes that, "this case falls in the category where an administrator offers a *post hoc* rationale during litigation to justify a decision reached on different grounds during the administrative process." King, 414 F.3d at 1003. Under these circumstances, the Court finds the proper remedy is to return the case to the administrator, to allow for reevaluation of Plaintiff's claim under what Defendant now says is the correct standard. Id. at 1005.[9]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that this case is **REMANDED** to the administrator, who shall reevaluate Plaintiff's claim for benefits under the standard set forth in Wickman v. Northwestern Nat. Ins. Co., 908 F.2d 1077 (1st Cir.), cert. denied, 498 U.S. 1013 (1990), and Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84 (1st Cir.), cert. denied, 129 S.Ct. 636 (2008).

Dated this 20th day of March, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[9] The Court further rejects Defendant's second reason for the denial, that the loss was excluded under the self-inflicted injury exclusion. As noted above, the policy exclusion in this case contemplated death resulting from, "suicide, attempted suicide, or purposeful self-inflicted wounds." (BLA 00002, 00028). Upon consideration, the Court finds, "the most natural reading of this exclusion does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication." Courtney, 2008 WL 189836 at *5.

- 11 -